2009-56585 / Court: 215

Filed 09 September 3 P3:37
Loren Jackson - District Clerk
Harris County
ED101J015504321
By: Sharon Carlton

**CAUSE NO. __________**

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION, CITGO REFINING AND CHEMICALS COMPANY, and PDV MIDWEST REFINING, LLC, | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| INTERNATIONAL INSURANCE COMPANY and U.S. FIRE INSURANCE COMPANY, | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION**

Plaintiffs CITGO PETROLEUM CORPORATION, CITGO REFINING AND CHEMICALS COMPANY, and PDV MIDWEST REFINING, LLC (collectively, "CITGO") file their Petition complaining of Defendants INTERNATIONAL INSURANCE COMPANY and U.S. FIRE INSURANCE COMPANY (collectively, the "Insurers"), and for their causes of action against Defendants would allege and show the following:

**I.**

**DISCOVERY CONTROL PLAN**

1. Plaintiffs intend to conduct discovery in this case under Level 3 of Texas Rule of Civil Procedure 190.

**II.**

**PARTIES**

2. Plaintiff CITGO PETROLEUM CORPORATION ("CITGO Petroleum") is a corporation duly formed and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas.



Certified Document Number: 43231100 - Page 1 of 11

3. Plaintiff CITGO REFINING AND CHEMICALS COMPANY ("CRCC") is a Delaware limited partnership with its principal place of business in Corpus Christi, Texas. CITGO Petroleum is the general partner; CITGO Investment Company, a wholly-owned subsidiary of CITGO Petroleum, is the limited partner.

4. Plaintiff PDV MIDWEST REFINING, LLC ("PDVMR") is a Delaware limited liability company with its principal place of business in Lemont, Illinois. PDVMR is wholly-owned by VPHI Midwest, Inc., a Delaware corporation whose parent corporation is CITGO Petroleum.

5. The Defendants are insurance companies that sold umbrella/excess liability policies to Plaintiffs between approximately 1983 and 1987. Upon information and belief, Defendants are all licensed to do business in Texas and/or are transacting business in Texas.

6. Upon information and belief, Defendant INTERNATIONAL INSURANCE COMPANY ("International") is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois. International may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

7. Upon information and belief, Defendant U.S. FIRE INSURANCE COMPANY ("U.S. Fire") is a corporation organized and existing under the laws of Delaware with its principal place of business in New York. U.S. Fire may be served with process by serving its registered agent, Lisa Pietenpol, 6404 International Parkway, Suite 1000, Plano, Texas 75093-8227.

Certified Document Number: 43231100 - Page 2 of 11

## III.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this cause of action in that it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court.

9. Venue is appropriate and proper in this Court under Texas Civil Practice and Remedies Code section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Harris County, Texas.

## IV.

## THE UNDERLYING LAWSUITS

10. Plaintiffs have been named as defendants along with numerous other petroleum industry entities in eighty-nine lawsuits filed in California, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Vermont, Virginia, West Virginia, Wisconsin, and Puerto Rico (the "Underlying Lawsuits"). Most of the Underlying Lawsuits originally were filed in state courts across the country, and defendants in the Underlying Lawsuits removed the cases to federal court and moved for consolidation before a single judge in the Southern District of New York: *In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88. Some of the cases subsequently were remanded to state court. At present, thirty-one cases are pending against CITGO.

11. Plaintiffs in the Underlying Lawsuits generally are public and private water suppliers who have sued CITGO and dozens of other companies in the oil industry for claims relating to the use of methyl tertiary butyl ether ("MTBE").

12. For the most part, the complaints in the Underlying Lawsuits contain identical factual allegations and assert the same causes of action, although there are some minor



Certified Document Number: 43231100 - Page 3 of 11

differences from complaint to complaint. The complaints allege that the oil industry contaminated the nation's drinking water resources by adding MTBE to gasoline sold in certain areas of the country. The underlying plaintiffs allege that MTBE renders gasoline defective because it has enhanced solubility in water, and when released into the environment, "races through underground water reservoirs," spreading further and faster than other chemical constituents in gasoline, and eventually reaching public and private drinking water supplies. The complaints allege that MTBE is resistant to biodegradation, and is extremely expensive to remediate. The underlying plaintiffs also allege that MTBE is a possible human carcinogen, a known animal carcinogen, and imparts a foul odor to drinking water supplies making the water unfit for human consumption.

13. The underlying plaintiffs further allege that MTBE entered groundwater and the wells from which water is provided by various means, including but not limited to, gasoline spills, leaks, and other losses "at all links in the gasoline distribution chain," consumer and jobber overfills, as well as from rainwater.

14. Although there is some variance among the complaints, plaintiffs in the Underlying Lawsuits generally assert the following causes of action: strict liability based on design defect, strict liability based on failure to warn, negligence, public nuisance, private nuisance, trespass, civil conspiracy, and claims under the applicable state consumer fraud and state and federal environmental statutes. The underlying plaintiffs allege that even if the source of each release could be identified, the manufacturer of the gasoline cannot be identified because gasoline is typically commingled during the distribution process. As a result, plaintiffs claim that all defendants are jointly responsible for the contamination under various theories of

Certified Document Number: 43231100 - Page 4 of 11

liability, including: market share, alternative liability, concert of action, conspiracy, and enterprise liability.

15. The ad damnum clauses vary from case to case, but generally they seek the award of statutory penalties, compensatory damages, substantial punitive damages, and injunctive and equitable relief directing defendants to abate the nuisance and remediate the harm, test and monitor groundwater conditions, and to supply alternative water supplies, natural resources damages, and attorneys' fees. Not all complaints specify the amount of relief sought, but it is clear that all plaintiffs seek to recover substantial damages. For example, the City of Crystal River seeks $60 million in compensatory damages and $250 million in punitive damages on each count of its five-count complaint.

16. CITGO has entered into a confidential settlement with plaintiffs in fifty-seven of the consolidated Underlying Lawsuits. The amount of the settlement involves substantial sums. CITGO has notified the Insurers of the terms of the settlement. To date, the Insurers have failed and/or refused to acknowledge their obligations to indemnify CITGO for the settlement.

17. In addition, CITGO has incurred considerable attorneys' fees and costs in the defense of the Underlying Lawsuits. CITGO has demanded that the Insurers provide it a defense and/or reimburse CITGO under the Policies for the amounts CITGO has incurred in connection with the defense of the Underlying Lawsuits, and will continue to incur in the future. To date the Insurers have failed and/or refused to do so.

Certified Document Number: 43231100 - Page 5 of 11

V.

**CITGO'S INSURANCE COVERAGE**

18. This dispute relates to umbrella/excess liability policies sold by the Insurers to Southland Corporation and CITGO between approximately 1983 and 1987 (the "Policies").

19. CITGO did not exist until March 1983. During the period from 1983 to 1986, CITGO was a wholly-owned subsidiary of Southland and was a named insured under Southland's policies. At the time the Southland policies were issued, Southland was (and remains to this day) a Texas corporation with its principal place of business in Dallas, Texas.

20. Each of the Policies covers, *inter alia*, liability for property damage that occurred during the policy period, including property damage caused by MTBE.

21. Each Insurer has a duty to provide CITGO with a complete defense or to reimburse CITGO fully for defense costs. In addition, each Insurer has a duty to pay on behalf of or reimburse CITGO all sums that CITGO becomes legally obligated to pay as damages because of the Underlying Lawsuits in which property damage is alleged to have occurred during any part of a policy year during which any of the Policies were in effect, subject only to the applicable limits of liability and any applicable self-insured retentions contained in the Policies, and subject also to the prior exhaustion of applicable limits of coverage available from the underlying policies.

22. The Underlying Lawsuits allege property damage that occurred during some or all of the policy years in which the Policies were in effect.

23. The U.S. Fire and International Policies are excess of primary policies and/or self-insured retentions which have been exhausted or do not provide coverage for the Underlying Lawsuits.



Certified Document Number: 43231100 - Page 6 of 11

24. None of the exclusions contained in any of the Policies relieves the Insurers from their respective duties to defend or reimburse defense costs and/or indemnify CITGO.

25. If any provision in the Policies relating to the Insurers' obligations to defend or reimburse defense costs and/or indemnify CITGO for the Underlying Lawsuits is determined to be ambiguous, such provision must be construed against the Insurers as the drafters of the Policies and in a reasonable manner that maximizes CITGO's insurance coverage, and/or the policies should be reformed to effectuate coverage or the Insurers should be estopped from denying their contractual obligations because their current coverage positions are inconsistent with their and the insurance industry's prior representations, either directly or through their agents, to CITGO or to state insurance regulators with respect to the scope and intent of the Policies' terms and conditions.

**VI.**

**THE PARTIES' DISPUTE**

26. The Insurers have failed or refused to defend (or reimburse) CITGO for its defense of the Underlying Lawsuits.

27. The Insurers have failed to honor and/or have repudiated their obligations to indemnify CITGO under the Policies.

Certified Document Number: 43231100 - Page 7 of 11

VII.

**CAUSES OF ACTION**

***A. Declaratory Judgment***

28. CITGO incorporates by reference the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

29. An actual and justiciable controversy has arisen and now exists between CITGO and the Insurers concerning the nature and scope of each Insurer's obligations to defend, and/or to reimburse defense costs and to indemnify CITGO for costs incurred as a result of the Underlying Lawsuits.

30. Declaratory relief from this Court will terminate some or all of the parties' disputes and controversies.

31. Under the Uniform Declaratory Judgment Act as set forth in chapter 37 of the Texas Civil Practice and Remedies Code, CITGO requests the Court's declaration as to its rights on the one hand and the Insurers' duties on the other, with respect to the Underlying Lawsuits and the Policies.

32. Further, CITGO requests that the Court award attorneys' fees as are just under section 37.009 of the Declaratory Judgment Act.

***B. Breach of Contract***

33. CITGO incorporates by reference the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

34. Under the terms of the Policies, the Insurers each has a duty to fully defend or reimburse defense costs and/or to pay for or indemnify CITGO for all sums it is legally obligated to pay as damages with respect to the Underlying Lawsuits.



Certified Document Number: 43231100 - Page 8 of 11

35. Under the terms of the Policies, CITGO duly notified the Insurers of the Underlying Lawsuits and demanded that the Insurers defend CITGO or reimburse defense costs and/or pay for or indemnify CITGO for any settlements or judgments in connection with the Underlying Lawsuits. Each Insurer has wrongfully failed or refused to do so.

36. Even though the plain terms of the Policies the Insurers sold to CITGO (or Southland) obligate them to defend or reimburse defense costs and/or indemnify CITGO in connection with the Underlying Lawsuits, the Insurers have not agreed to defend or reimburse defense costs and/or indemnify CITGO in connection with the Underlying Lawsuits, thereby breaching their contractual obligations to CITGO.

37. As a result of this breach of contract, the Insurers have deprived CITGO of the benefits of the Policies for which CITGO has paid substantial premiums.

38. As a further result of the Insurers breaches of their duty to defend or pay CITGO's defense costs and/or their duty to indemnify CITGO, CITGO has sustained damages that are in excess of the minimum jurisdictional limits of this Court. CITGO seeks recovery of these damages as well as their costs of Court and reasonable attorneys' fees.

***C. Violation of Texas Insurance Code Chapter 542***

39. CITGO incorporates by reference the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

40. The Insurers have received all items, statements, and forms reasonably requested and required under Section 542.055.

41. The Insurers have delayed payment of the claim for more than 60 days.

42. The Insurers are liable to CITGO for damages for all sums that CITGO has or may become legally obligated to pay and for defense costs in connection with the Underlying



Certified Document Number: 43231100 - Page 9 of 11

Lawsuits, and interest on the amount of the claim at the rate of 18 percent a year, together with reasonable attorneys' fees.

VIII.

**JURY DEMAND**

Plaintiff CITGO demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that on final hearing the Court enter judgment:

a. Awarding all direct and consequential damages Plaintiffs have suffered as a consequence of Defendants' breach of contract;

b. Declaring that one or more of the Defendants owe Plaintiffs a duty to fully defend or reimburse defense costs and/or indemnify them in connection with the claims made against them in the Underlying Lawsuits;

c. Awarding interest on the amount of the claim at the rate of 18 percent a year;

d. Awarding pre- and post-judgment interest;

e. Awarding reasonable and necessary attorneys' fees and costs of court;

f. Awarding such additional relief, both general and special, at law or in equity, to which Plaintiffs may show themselves to justly be entitled.

Certified Document Number: 43231100 - Page 10 of 11

Respectfully submitted,

By: [signature]

J. Mark Lawless
State Bar No. 12041700
mlawless@nickenskeeton.com
Pamella A. Hopper
State Bar No. 00793980
phopper@nickenskeeton.com
NICKENS KEETON LAWLESS FARRELL & FLACK LLP
327 Congress Avenue, Suite 490
Austin, Texas 78701
Telephone: 512-472-3067
Facsimile: 512-472-3068

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 43231100 - Page 11 of 11




I, Loren Jackson, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date
Witness my official hand and seal of office this October 13, 2009

Certified Document Number: 43231100 Total Pages: 11

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**